UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
IMMAR CHAVEZ,

                Plaintiff,

        - against -

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-4474 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Immar Chavez brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), against Defendant Commissioner of the Social Security Administration ("SSA"), seeking judicial review of the SSA's denial of his claims for Disability Insurance Benefits ("DIB"). The parties have cross-moved for judgment on the pleadings. (Dkts. 11, 16.) For the reasons explained below, the Court grants Plaintiff's motion for judgment on the pleadings and denies Defendant's cross-motion.

## BACKGROUND

### I. Factual and Procedural Background

Plaintiff, born in April 1963, was 54 years old on April 4, 2018, the alleged onset date of his disability. (Tr.[1] 291.) Plaintiff worked as an automotive parts delivery driver from September 2014 to April 2018, and as a machine operator, making metallic rolls, for 30 years from August 1982 to September 2012. (Tr. 52–54, 416.) Plaintiff's work as a delivery driver entailed "load[ing]

---

[1] All references to "Tr." refer to the continuous pagination of the Administrative Transcript (*see* Dkt. 9), and not to the internal pagination of the constituent documents.

1

heavy auto parts [such as] engines, batteries, [or] brake parts" from his delivery vehicle." (Tr. 52.) Plaintiff lifted an estimated maximum of 50 pounds in this job. (Tr. 53.)

In May 2017, Plaintiff was admitted to the emergency room of South Nassau Community Hospital ("SNCH") with "complaints of right buttock[] pain and right anterior thigh pain," and that the throbbing pain he feels has been keeping him up at night and causing him trouble getting in and out of his truck. (Tr. 421.) On May 1, 2018, Plaintiff was examined again at SNCH by physician William Terrin who diagnosed Plaintiff with lower back pain and prescribed ibuprofen to Plaintiff. (Tr. 436–37.)

On August 16, 2018, Plaintiff was treated for the first time by Dr. Kanwarpaul Grewal, an orthopedic and spinal care specialist. (Tr. 442–43.) Dr. Grewal's treatment notes indicate that Plaintiff complained of moderate back and sciatica pain in both legs, and accordingly that Plaintiff had been unable to work since April 2018. (Tr. 442–43.) Plaintiff reported a pain level of 7 out of 10, and experienced pain that was intermittent, throbbing, stabbing, and sharp. (Tr. 442.) A back examination conducted by Dr. Grewal indicated that Plaintiff had an abnormal gait, limited ability to bend to either side, and decreased range of motion in both his left and right legs. (Tr. 442.) Plaintiff also was unable to perform a single hip flexion on his right side. (*Id*.) Dr. Grewal further noted chronic pain in Plaintiff's left shoulder. (*Id*.)[2]

Plaintiff protectively applied for DIB on October 18, 2018, alleging disability as of April 4, 2018, due to back pain caused by lumbar disc bulges and obesity. (Tr. 59–72.) In conjunction with his application for DIB, Plaintiff underwent a consultative orthopedic examination in January

---

[2] Plaintiff also was seen by Dr. Grewal on October 4, 2018 (Tr. 444–45), December 17, 2018 (Tr. 448–50), January 14, 2019 (Tr. 451–52), March 6, 2019 (Tr. 470–72), and April 15, 2019 (Tr. 474–78). Treatment notes from these sessions, which were submitted into the record for the ALJ's consideration, indicate consistent complaints of back pain and consistent diagnosis by Dr. Grewal.

2

2019 with Dr. Syeda Asad, a specialist in nuclear medicine. (Tr. 453–57.) According to Dr. Asad, Plaintiff denied "any trauma, injury or accident" as the cause of his lower back pain, and described his back pain as sharp, registering 6 out of 10 in intensity, and creating numbness and a tingling sensation in his left leg. (Tr. 454.) Plaintiff also reported aching pain in his left shoulder, estimating the pain level at 5 out of 10 in intensity, and worsening with movement. (Tr. 454.) Dr. Asad observed that Plaintiff demonstrated a normal gait, had full bilateral range of motion in his hips, and "appear[ed] to be in no acute stress." (Tr. 455.) Based on his observations and examination, Dr. Asad concluded that Plaintiff had "mild to moderate limitations for squatting, kneeling, bending, walking and standing for a long period of time" and "mild to moderate limitations for lifting, carrying or pushing heavy objects." (Tr. 456.)

As part of Plaintiff's DIB application, Dr. Grewal also submitted notes from treatment sessions on December 17, 2018, and on January 14, 2019. (Tr. 448–52.) Dr. Grewal diagnosed Plaintiff with "slow progressive back pain for [the] past two years," and that the pain is "aggravated by walking or sitting too long[.]" (Tr. 448, 451.) In the treatment notes for the December 2018 visit, Dr. Grewal assessed Plaintiff with suffering from disc bulges and mild central canal stenosis in the L3-L4 and L4-L5 vertebrae. (Tr. 448.) He further diagnosed Plaintiff with lumbar radiculopathy[3] and back pain, and indicated that Plaintiff should "avoid any kind of bending and lifting work." (Tr. 449.) Dr. Grewal's treatment notes from January 2019 indicated improvement in Plaintiff's systems as he managed his pain with prescribed medication, but Dr. Grewal did not

---

[3] "Lumbar radiculopathy is a disease involving the lumbar spinal nerve root and is typically caused by a compression of the spinal nerve root." *McIntosh v. Berryhill*, No. 17-CV-5403 (ER) (DF), 2018 WL 4376417, at *2 n.6 (S.D.N.Y. July 16, 2018) (citations and internal quotation marks omitted).

change his diagnosis from December 2018, or the recommendation that Plaintiff avoid bending and lifting. (Tr. 452.)

On February 27, 2019, state agency medical analyst Dr. R. Pradhan determined that Plaintiff was not disabled.[4] (Tr. 66–74.) After reviewing Plaintiff's medical records and Dr. Grewal's December 17, 2018 medical opinion, Dr. Pradhan concluded that Dr. Grewal's medical opinion was "without substantial support [from Dr. Grewal], which render[ed] it less persuasive." (Tr. 72–73.) Instead, Dr. Pradhan opined that Plaintiff could occasionally lift and/or carry up to 50 pounds and could frequently lift and/or carry up to 25 pounds, and that he had normal gait and no postural limitations. (Tr. 71–72.) Therefore, Plaintiff's DIB application was initially denied on February 27, 2019. (Tr. 112–23.)

Plaintiff requested reconsideration of this initial denial (Tr. 124), and on July 1, 2019, state agency medical analyst Dr. L. Samuel affirmed Dr. Pradhan's determination that Plaintiff was not disabled.[5] (Tr. 75–84.) Dr. Samuel reviewed Plaintiff's medical files including, follow-up medical records from Dr. Grewal dated March 5, 2019, and April 15, 2019. (Tr. 79.) Like Dr. Pradhan, Dr. Samuel opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, and that he had no spinal tenderness, spasms, or scoliosis. (Tr. 81–82.) Dr. Samuel also discounted the medical opinion of Dr. Grewal on the basis that it was without substantial support. (Tr. 82–83.) Accordingly, the denial of Plaintiff's disability claim was affirmed on July 12, 2019. (Tr. 125.) On August 16, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 138–39.)

---

[4] The record contains neither the first name of Dr. Pradhan, nor his specialty.

[5] The record contains neither the first name of Dr. Samuel, nor his specialty.

4

On September 26, 2019, orthopedist Dr. Jeffrey Guttman conducted an independent orthopedic examination of Plaintiff in connection with his workers' compensation claim for a work-related injury he suffered on July 2, 2019. (Tr. 505.) According to Dr. Gutman, Plaintiff "injured his back while lifting heave [sic] boxes of car parts." (Tr. 505.) Dr. Guttman found Plaintiff had normal lumbar alignment and normal range-of-motion in his legs and hips, but noted the complaints of pain during the range of motion testing, and that Plaintiff could engage in light work but could not lift more than 25 pounds. (Tr. 507.) Dr. Guttman could not determine the permanency of Plaintiff's condition, and recommended that Plaintiff follow up with an orthopedic surgeon to discuss further treatment options. (Tr. 507.)

Plaintiff was examined by Dr. Grewal several more times between September 2019 and May 2020. (Tr. 502–03, 509–10, 512–14, 516–18). His treatment notes indicate that on July 29, 2019, Plaintiff experienced "increased flare up of pain and symptoms," but had suffered "[n]o new injury." (Tr. 503.) In December 23, 2019, Dr. Grewal noted that Plaintiff had shown "[n]o recent improvement," he had experienced "persistent interactable [sic] pain," and that while his symptoms showed "partial[] improvement with medication and injection[s], [the] relief [was] very short term." (Tr. 514.) The final set of treatment notes from Plaintiff's May 18, 2020 visit indicate that Plaintiff reported no change in his pain and limitations in his daily activity, and demonstrated hesitancy to have surgery to treat his pain. (Tr. 516–17.)

On April 29, 2020, Plaintiff appeared telephonically before ALJ Sandra M. McKenna, accompanied by his attorney at the time, Alan Karmazin. (Tr. 33–35.) At the hearing, Plaintiff testified that he lived with his wife and adult daughter. (Tr. 36.) Plaintiff explained that he could only lift 10 to 15 pounds because if he lifted more than that amount he felt "malaise in [his] left leg and pain" and "the nerves in [his] back pinch[]." (Tr. 36.) Plaintiff relied on his wife's

5

assistance in tying his shoes and putting on his pants because he could not bend or crouch. (Tr. 39.) Plaintiff testified that he did not cook (Tr. 40), that he could only sleep about three hours at a time because of back pain (Tr. 41), and that he relied on his wife and sons to cover the costs of rent and food (Tr. 34).

The ALJ held a supplemental hearing on August 7, 2020, to admit the testimony of Vocational Expert ("VE") Yaakov Taitz into evidence. (Tr. 44–64.) Plaintiff along with his attorney Christopher Latham, attended the telephonic hearing. (Tr. 48–49.) The VE testified that Plaintiff's previous occupations as an auto parts deliverer and as a pressing machine operator were both classified as medium exertion jobs, and there were no direct transferrable skills to light exertion jobs. (Tr. 55.)

By decision dated November 30, 2020, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from April 4, 2018, the alleged disability onset date, through the date of the ALJ's decision. (Tr. 93–104.) On December 16, 2020, Plaintiff requested a review of the ALJ's decision. (Tr. 286.) On June 9, 2021, the Appeals Council denied Plaintiff's request, making the ALJ's determination the Commissioner's final decision. (Tr. 1–3.) Plaintiff timely[6] commenced this action on August 9, 2021. (Compl., Dkt. 1.)

---

[6] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). According to 42 U.S.C. § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to

## II.     The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).[7] First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii). If the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether Plaintiff's impairment(s) meet(s) or medically equal(s) one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 416.920(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1. If the ALJ determines at step three that the plaintiff has an impairment that meets or equals one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 416.920(a)(4)(iii). On the other hand, if the plaintiff does not have

---

the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). The SSA's final decision was issued June 9, 2021 (Tr. 1–3), and the Complaint was filed on August 9, 2021 (Compl., Dkt. 1), 56 days after the presumed receipt of the decision, rendering this appeal timely.

[7] Some cases cited below involve DIB regulations, while others involve Social Security Income ("SSI") regulations, but the DIB and SSI regulations are "virtually identical." *Canter v. Saul*, No. 19-CV-157 (KAD), 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020). The DIB regulations are found at 20 C.F.R. § 404.900 *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*

such an impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 4, 2018. (Tr. 96.) At step two, the ALJ determined that Plaintiff had the "following severe impairments: lumbar disc bulges and obesity." (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (Tr. 97.)

The ALJ then determined Plaintiff's RFC as having the ability to perform "medium work . . . except [Plaintiff has] the ability to climb ramps, stairs, ladders, ropes, and scaffolds occasionally, and balance, stoop, kneel, crouch, and crawl occasionally."[8] (Tr. 97.) At step four, the ALJ concluded that despite his severe impairments, Plaintiff could continue performing his past work as a commercial driver/operator of advanced auto parts and as a pressing machine operator. (Tr. 104.) The ALJ thus concluded that Plaintiff was not disabled. (Tr. 104.)

---

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

8

**STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and brackets omitted). In determining whether the Commissioner's findings are based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

**DISCUSSION**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ failed to apply the relevant legal standards when evaluating Plaintiff's credibility. (Pl.'s Mot. J. Pleadings, Dkt. 11-1, at 8–12.) As discussed below, the Court grants Plaintiff's motion and remands this case to the SSA because the ALJ failed to adequately develop the record, and arrived at an RFC by relying on stale opinions that cannot constitute substantial evidence. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *15–27 (E.D.N.Y. Sept. 28,

9

2017) (remanding after the court determined that the record had not been fully developed and that the RFC was not supported by substantial evidence).

I.   **The ALJ Failed to Develop the Record**

Although Plaintiff did not expressly challenge the sufficiency of the record, the Court must independently consider whether the ALJ satisfied her duty to develop the record. *Sanchez v. Saul*, No. 18-CV-12102 (PGG) (DF), 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 23, 2020) ("As a threshold matter, and regardless of the fact that Plaintiff did not raise an express challenge to the adequacy of the Record, this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."), *report and recommendation adopted*, 2020 WL 1330215 (S.D.N.Y. Mar. 23, 2020).  "[B]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). "[E]ven where, as here, the claimant is represented by counsel," the ALJ's obligation to adequately develop the record applies. *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 16, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). "Legal errors regarding the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

Here, the ALJ should have requested hospital records related to Plaintiff's alleged workplace injury to his back that occurred in July 2019. (Tr. 505.)  The July 2019 injury is referenced in Dr. Guttman's medical source statement, and Dr. Guttman noted that "[i]mmediately following the incident, Mr. Chavez went to the local hospital where he was evaluated," and that "X-rays of the low back were performed" and medications were prescribed to Plaintiff. (Tr. 505.)

As explained in further detail below, Plaintiff's back pain appears to have worsened after this injury. For example, Dr. Grewal's treatment notes indicate that on July 29, 2019, Plaintiff

experienced "increased flare up of pain and symptoms." (Tr. 503.) Although those notes also indicated that Plaintiff suffered "[n]o new injury" (Tr. 503), the ALJ knew that there was an alleged injury in July 2019 and thus there was an inconsistency in the record that should have been investigated—either by requesting records from the hospital that had treated Plaintiff or by requesting an updated medical source opinion from the treating physician, Dr. Grewal. However, rather than request documents related to this injury, the ALJ appears to have concluded that Plaintiff was not credible regarding his pain and physical limitations because he "indicated he ha[d] not worked since the 2018 alleged date," yet allegedly suffered an injury at work in July 2019. (Tr. 102.) By not requesting additional records related to the July 2019 injury or an additional medical source opinion from Dr. Grewal, the ALJ failed to adequately develop the record, and her decision must be remanded on that basis alone. *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (remanding for failure to develop the record because the ALJ did not "obtain adequate information from [claimant's] treating physician"); *Commisso v. Comm'r of Soc. Sec.*, No. 20-CV-4872 (PKC), 2022 WL 742871, at *7 (E.D.N.Y. Mar. 11, 2022) (same); *see also Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *11 (S.D.N.Y. Aug. 6, 2021) (recognizing this duty to develop the record outside of the "treating physician rule" context). Therefore, remand is appropriate in this case.[9]

---

[9] The Court notes that Plaintiff's counsel wrote to the ALJ on September 22, 2020 to inform her that they "have submitted all of the medical evidence and the record [was] complete." (Tr. 419.) However, courts in this Circuit have held that if "it is apparent from the face of the record that the record lacks necessary information, the ALJ cannot be relieved of [her] affirmative obligation to develop the record by a statement of counsel." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010); *see also Almonte v. Comm'r of Soc. Sec.*, No. 21-CV-3091 (PKC), 2022 WL 4451042, at *6 (E.D.N.Y. Sept. 23, 2022) (same). Here, it is apparent from the face of the record that more information was needed regarding the severity of Plaintiff's July 2019 injury.

11

**II.     The ALJ Improperly Assessed the Medical Source Opinions**

An ALJ's RFC determination must be supported by substantial evidence, that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401 (internal quotation marks and brackets omitted)); *see also Talavera*, 697 F.3d at 151.  Medical records alone cannot provide substantial evidence for an RFC determination; an "ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021).  As noted, in determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings.  20 C.F.R. § 404.1520(a)(3).  Moreover, the Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417.

An ALJ commits reversible error when the ALJ does "not []account for the fact that medical opinions are stale." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-3687 (VSB) (RWL), 2021 WL 4200872, at *18 (S.D.N.Y. Aug. 19, 2021).  "A medical opinion is not stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).  However, "a medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Rodriguez*, 2021 WL 4200872, at *18.  If an ALJ relies on medical opinions that are "conclusory, stale, and based on an incomplete medical record," the ALJ's opinion is not supported by substantial evidence. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343–44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (citations omitted)).

Here, the ALJ found Dr. Grewal's opinions to be unpersuasive because they were "not supported by or consistent with the overall record., including the opinions of the consultative examiner"—Dr. Asad—"or the medical consultants," Dr. Samuel and Dr. Pradhan.  (Tr. 103.)

Similarly, the ALJ disagreed with Dr. Guttman's September 2019 medical opinion that Plaintiff could lift no more than 25 pounds, because it was inconsistent with Drs. Pradhan and Samuel's assessments that Plaintiff could lift up to 50 pounds. (Tr. 103.) Yet, the ALJ's assessment of these opinions was erroneous because she disregarded the fact that Dr. Asad's opinion was rendered in January 2019, Dr. Pradhan's report in February 2019, and Dr. Samuel's on July 1, 2019. (Tr. 119, 122–23, 153–55.) The ALJ's decision dated November 30, 2020, relied heavily on the three consultative opinions that were between and 17 and 22 months old by that point.

As indicated above, age of an opinion alone is not determinative of its staleness. *Biro*, 335 F. Supp. 3d at 470. Here, however, there was evidence in the record that Plaintiff's back condition had worsened in the period between when Drs. Asad, Samuel, and Pradhan issued their opinions and the ALJ's decision, because of Plaintiff's July 2, 2019 workplace injury. Because these three opinions were issued before Plaintiff's injury, these doctors were unable to account for the severity of the injury. In fact, as discussed, Dr. Grewal's notes of his first session with Plaintiff after the injury indicated that Plaintiff was experiencing "increased flare up of pain and symptoms." (Tr. 503.) In fact, Dr. Guttman's assessment a few weeks later indicated that Plaintiff could engage in light work, but could not lift more than 25 pounds. (Tr. 507.) Then, in December 2019, Dr. Grewal noted that Plaintiff had shown "[n]o recent improvement" and was experiencing "persistent interactable [sic] pain," and that relief of his symptoms through medication and injection proved to be only "short term." (Tr. 514.) And finally, notes from Plaintiff's May 18, 2020 visit with Dr. Grewal indicated that Plaintiff reported no change in his pain and limitations in his daily activity. (Tr. 516–17.) To be clear, the record does not clearly establish how severe Plaintiff's 2019 injury was because the ALJ did not develop the record as to the impact of that injury. But there is enough evidence in the current record for the Court to conclude that the ALJ erred in using the medical

13

opinions from a one-time consultative examiner and two state agency analysts (who never examined or treated Plaintiff) to discount the post-injury treatment notes of Plaintiff's treating orthopedist Dr. Grewal, and the opinion of Dr. Guttman, the independent medical examiner. Because information about Plaintiff's 2019 injury "very well could have changed the opinions" of Drs. Asad, Samuel, and Pradhan, their opinions were stale. *See Rodriguez*, 2021 WL 4200872, at *19. Therefore, the ALJ's decision must be remanded because the RFC determination relied on stale decisions that did not incorporate all of Plaintiff's relevant medical information. *See Almonte*, 2022 WL 4451042, at *9.

### III.    The ALJ's Assessment of Plaintiff's Credibility

Because the Court finds that remand is required to correct the errors discussed above—namely, the ALJ's failure to develop the record and the fact that the rationale for disagreeing with Dr. Grewal's opinion was unsupported by substantial evidence—it need not address whether the ALJ failed to properly evaluate Plaintiff's credibility. *See Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 331 (S.D.N.Y. 2010).

However, the Court notes that in defending the ALJ's assessment of Plaintiff's credibility, Defendant relies on the fact that Plaintiff "took his daughter to school and his son to work, helped his wife with chores around the house and grocery shopping, did the laundry and fold[ed] clothes, cleaned and dusted, drove a car, walked, shopped in stores for groceries and food, and went to church two times per week." (Def.'s Mem. Law Supp. Cross-Mot. J. Pleadings, Dkt. 16-1, at 20 n.6.) However, "[the Second] Circuit has repeatedly recognized that a claimant need not be an invalid to be found disabled." *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quotations omitted). "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for

14

themselves." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014). In her decision, the ALJ did not specifically state that Plaintiff's ability to conduct these daily activities was part of the rationale for finding Dr. Grewal's medical opinion to be unpersuasive, instead making a vague assertion that Dr. Grewal's opinion "is not supported by or consistent with the overall record." (Tr. 103.) On remand, if the ALJ relies on Plaintiff's ability to conduct daily activities in discounting either Plaintiff's credibility or in weighing the persuasiveness of a medical source statement, the ALJ must analyze how those activities bear on Plaintiff's specific impairments and abilities.

Furthermore, the Commissioner should consider on remand how Plaintiff's work history of almost thirty-five years factors into the ALJ's assessment of Plaintiff's credibility regarding the severity of his impairments and whether he can work. *See Bradley v. Colvin*, 110 F. Supp. 3d 429, 447 (E.D.N.Y. 2015). Courts in this Circuit have often considered a claimant's work record before claiming disability in assessing whether the claimant's complaints about being unable to work are credible. *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); *see also Morales v. Comm'r of Soc. Sec.*, No. 21-CV-511 (PKC), 2022 WL 4586313, at *7 n.11 (E.D.N.Y. Sept. 29, 2022) (urging the Commissioner to consider on remand claimant's decades' long work record history in assessing claimant's credibility).

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

15

                                                                  SO ORDERED.

                                                                  */s/ Pamela K. Chen*
                                                                  Pamela K. Chen
                                                                  United States District Judge

Dated: December 14, 2022
        Brooklyn, New York